FILED

2005 Mar-25  AM 08:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL ACTION NO.** |
| | ) | **CR-04-PT-0199-S** |
| | ) | |
| **McWANE, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This cause comes on to be heard upon Defendants' Joint Motion to Dismiss Counts 1 and

25 of the Superseding Indictment for Failing to Plead Essential Elements of the Obstruction

Charge (Pretrial Motion Number 5) filed on September 23, 2004.[1]

## FACTS AND PROCEDURAL HISTORY

Count 25 of the Superseding Indictment alleges:

> On or about April 25 through April 27, 2000, in the Northern District of Alabama, McWane, Inc., the defendant, did corruptly obstruct, impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under which a pending proceeding was being had before the United States Environmental Protection Agency, an agency of the United States, by providing the following false and misleading information to the United States Environmental Protection Agency, to wit: that there is sufficient recycling of wastewater that the facility normally would not have a discharge.
>
> In violation of Title 18, United States Code, Section 1505[2] and 1515(b), and Title

---

[1] The only defendant named in Count 25 is the defendant McWane.  However, several defendants are named in Count 1.  It is not clear who the alleged conspirators are with reference to Count 25.

[2] Section 1505 is the most pertinent to the issues addressed here.  The text of § 1505 is laid out in the "Conclusions of the Court" section of this opinion.

18, United States Code, Section 2.

Count 1 charges defendants with conspiracy under 18 U.S.C. § 371.  Count 1 lists several

objects of the conspiracy, one of which is:

> To corruptly influence, obstruct, and impede, and endeavor to influence, obstruct,
> and impede, the due and proper administration of law under which a pending
> proceeding is being had before the EPA, an agency of the United States, in
> violation of Title 18, United States Code, Sections 1505, 1515(b), and 2.

In a Bill of Particulars filed by the United States on March 10, 2005, the prosecution

identified what was allegedly meant by "pending proceeding" in the indictment.  According to

the Bill of Particulars, the EPA Science Ecosystem Support Division (SESD) conducted a civil

"Compliance Sampling Inspection" of McWane's Birmingham facility on April 25-27, 2000.

According to the United States, it was during this inspection that McWane committed the

violations alleged in Count 25.

## ARGUMENTS[3]

**I.    Defendants' Motion.**

    **A.    Essential Elements of a Section 1505 Violation.**

According to defendants, the crime of obstruction of an agency proceeding under 18

U.S.C. § 1505 has three essential elements: (1) there must be a pending proceeding before a

department or agency of the United States; (2) the defendant must be aware of such a proceeding;

and (3) the defendant must have intentionally endeavored corruptly to influence, obstruct or

impede the pending proceeding.  In addition to the three elements contained in the statute,

defendants contend, the government may not impose criminal liability for obstructing an

_____

[3] This section summarizes the arguments made by the parties and does not necessarily
reflect the conclusions reached by the court.

investigation unless the defendant's conduct has a sufficient "nexus" to the investigation, such that it is likely to actually obstruct it.  *See United States v. Aguilar*, 515 U.S. 593, 599-600 (1995) (discussing § 1503).  Because Count 25 does not adequately allege each essential element of a § 1505 violation, and because the government cannot satisfy the "nexus" requirement, defendants argue, Count 25 should be dismissed.

### B.    McWane's Alleged Conduct Lacked the Requisite Nexus to, and Therefore Cannot Have Obstructed, the EPA Proceeding.

According to defendants, there is no violation of § 1505 unless there is an objective basis to believe that the alleged obstructive conduct in fact was likely to impair the investigation.  In support of this argument, defendants point to *United States v. Aguilar*, 515 U.S. 593, 599-600 (1995).  In *Aguilar*, the Supreme Court addressed the requirements for a violation under 18 U.S.C. § 1503,[4] which addresses obstruction of a judicial proceeding.  The Supreme Court

---

[4] Defendants contend that although *Aguilar* involved § 1503, its reasoning also applies to § 1505.  According to defendants, it is generally accepted that because the language of the Omnibus Clauses of 1505 and 1503 are substantially identical, case law interpreting one section is relevant in assessing the other.  *See, e.g., United States v. Mitchell,* 877 F.2d 294, 299 n.4 (4th Cir. 1989) (agreeing with their "sister circuits that the identity of purpose among [18 U.S.C. §§ 1503 and 1505, and 26 U.S.C. §7212]  makes case law interpreting any one of these provisions strongly persuasive authority in interpreting the others"); *United States v. Laurins,* 857 F.2d 529, 536 (9th Cir. 1988), *cert. denied,* 492 U.S. 906 (1989) (stating "cases interpreting section 1503 are relevant to constructions of section 1505"); *Taran v. United States*, 266 F.2d 561, 562 (8th Cir. 1959) (stating, "[i]n general, § 1505 serves a purpose in the administrative field similar to that of §§ 1503 and 1504 in the judicial field").

The court notes, however, that the Eleventh Circuit has previously "[held] that Section 1505 and 1503 are too materially different for the construction of one to guide the construction of the other."  *United States v. Shotts,* 145 F.3d 1289, 1299 (11th Cir. 1998) (discussing holding in *United States v. Brenson*, 104 F.3d 1267 (11th Cir. 1997)).  In *United States v. Stickle,* 355 F.Supp.2d 1317 (S.D. Fla. 2004), the court accordingly rejected the application of *Aguilar* to a § 1505 charge.  The *Stickle* court stated:

As mentioned, the Defendants contend that the section 1505 objective should be

3

adopted a nexus requirement that had been developed in the Courts of Appeals.  The Court

stated:

> [Under § 1503, t]he action taken by the accused must be with an intent to
> influence judicial or grand jury proceedings; it is not enough that there be an
> intent to influence some ancillary proceeding, such as an investigation
> independent of the court's or grand jury's authority.  Some courts have phrased this
> showing as a "nexus" requirement--that the act must have a relationship in time,
> causation, or logic with the judicial proceedings.  In other words, the endeavor
> must have the " 'natural and probable effect' " of interfering with the due
> administration of justice.

515 U.S. at 599 (citations omitted).  Relying on *Aguilar*, defendants argue that, even if the

indictment adequately alleged that McWane knew about and also intended to obstruct an EPA

proceeding, Count 25 would still have to be dismissed because the alleged obstructive conduct

did not have the "natural probable effect" of interfering with that proceeding.

In *Aguilar*, the defendant, a federal judge, told his nephew of a federal wiretap, and the

nephew informed the target of that wiretap.  515 U.S. at 595-96.  The government charged Judge

Aguilar with obstruction of justice under 18 U.S.C. § 1503 for lying to FBI agents who

questioned him regarding the wiretap leak.  *Id.* at 597.  The Supreme Court found that Judge

Aguilar's case did not satisfy the "nexus" requirement and stated:

> We do not believe that uttering false statements to an investigating agent--and that
> seems to be all that was proved here--who might or might not testify before a
> grand jury is sufficient to make out a violation of the catchall provision of § 1503.

---

dismissed or struck from Count One because there was no pending "proceeding"
as required by that statute. In reliance, the Defendants cite *United States v.
Aguilar*, 515 U.S. 593, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995). *Aguilar* is not
determinative, however, because it addressed the explicit language of section
1503, a more narrowly tailored statute.

355 F.Supp.2d at 1328.

*Id.* at 600.

According to defendants, the key point in *Aguilar* was that it was unclear that the defendant knew his false statements would be provided to the grand jury. Defendants note that Judge Aguilar was aware of the pending grand jury proceeding in the matter when he made false statements to the FBI agents. *Aguilar*, 515 U.S. at 600-01. If, under such circumstances, Judge Aguilar was not liable for obstructing a proceeding, defendants argue, the indictment here plainly fails to state an obstruction charge against McWane. Defendants note that the alleged obstructive conduct here consists of an unsworn statement by an unknown McWane Pipe employee made to an EPA inspector during the course of a routine environmental inspection.[5] According to defendants, any statements that were made by facility personnel during the inspection were, presumably, informal verbal responses to questions posed by the EPA inspectors. Defendants state that it is axiomatic that regulated entities are routinely subject to inspections by regulatory agencies. Defendants assert that the EPA inspectors did not explain to the McWane Pipe employees that the inspectors' presence would convert the inspection into a "pending proceeding," or that their statements would be used in a "pending proceeding." *See Pettibone v. United States,* 148 U.S. 197, 204-05 (1893) (discussing sections 5399 and 5440 of the Revised Statutes of the United States);[6] *United States v. Vaghela,* 169 F.3d 729, 733 (11th Cir. 1999)

_____

[5] It is not clear whether such person was an alleged conspirator under Count 1.

[6] The *Pettibone* court stated:

> The construction that applies to the first branch of section 5399 must be applied to the second, and if it were essential that the person accused should know that the witness or officer was a witness or officer in order to conviction of the charge of influencing, intimi[d]ating, or impeding such witness or officer in the discharge of his duty, so it must be necessary for the accused to have knowledge or notice or

(citing *Aguilar* for the proposition that if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct justice under § 1503); *United States v. Guzzino*, 810 F.2d 687, 696 (7th Cir. 1987) (stating, "[t]o prove a violation of section 1503, the government must show that each defendant knew of the pending judicial proceeding and specifically intended to impede its administration").

Defendants assert that the EPA followed the inspection with an Information Request under § 308 of the Act.  Clearly, defendants contend, the Agency understood how to obtain formal responses to important questions.  Therefore, defendants maintain, the ambiguous verbal statement charged here, standing alone, did not "interfere" with the EPA inspection.

### C.    Judicial Construction of "Pending Proceeding."

#### 1.    Interpretations of "Pending Proceeding."

According to defendants, the Eleventh Circuit has not yet interpreted "pending proceeding" in § 1505.  However, defendants point to two recent Ninth Circuit decisions to support their argument for a narrow construction of the "pending proceeding" requirement. Defendants note that in *United States v. Technic Services, Inc.,* 314 F.3d 1031 (9th Cir. 2002), the court affirmed the defendant's conviction under § 1505 and stated:

> However, the record shows that TSI's conduct, while removing the asbestos at the pulp mill, was under <u>investigation</u> by the EPA at the relevant time. The EPA is, of course, an agency of the United States. 42 U.S.C. § 4321; Reorganization Plan No. 3 of 1970, 3 C.F.R. § 1072 (1966-70). An investigation into a possible violation of the Clean Air Act or Clean Water Act, which could lead to a civil or

_____

> information of the pendency of proceedings in the United States court, or the progress of the administration of justice therein, before he can be found guilty of obstructing or impeding, or endeavoring to obstruct or impede, the same.

148 U.S. at 204-05.

criminal proceeding, 42 U.S.C. § 7413(b), (c); 33 U.S.C. § 1319(b), (c), is a kind of proceeding, see *United States v. Vixie*, 532 F.2d 1277, 1278 (9th Cir.1976) (per curiam) ("An administrative investigation is a 'proceeding' within the meaning of 18 U.S.C. § 1505.").

314 F.3d at 1044 (emphasis added).

Defendants also point to *United States v. Kim*, 95 Fed.Appx. 857 (9th Cir. 2004), where the district court determined that a telephone interview of defendant by an SEC investigator was not a "pending proceeding" under § 1505, because it was "merely an informal inquiry, made before the SEC issued its formal order of authority authorizing subpoena power." 95 Fed.Appx. at 861. However, the Ninth Circuit did not decide whether the telephone interview satisfied the "pending proceeding" requirement, because it found the defendant lacked the sufficient intent. *Id.*

According to defendants, courts that have interpreted § 1505 after *Aguilar* have held that *Aguilar* applies not only to § 1503, but also to § 1505. *See United States v. Senffner,* 280 F.3d 755, 762 (7th Cir. 2002) *cert. denied*, 536 U.S. 934 (2002) (citing *Aguilar* and stating, "[i]n order to prove that Senffner 'endeavored' to obstruct an SEC proceeding under section 1505, the government need only show that Senffner's actions had the 'natural and probable' effect of interfering with that proceeding"); *United States v. Hopper*, 177 F.3d 824, 830-31 (9th Cir. 1999) (finding, pursuant to the standard in *Aguilar*, that the defendant's action had the "natural and probable" effect of obstructing an IRS proceeding). Although courts have held that *Aguilar* applies to §1505, defendants assert, none of the aforementioned cases actually interpreted "pending proceeding." Defendants contend that more useful guidance on the phrase "pending proceeding" is provided by cases in the Eleventh Circuit and other Circuits interpreting the more

commonly litigated §1503.[7]

Defendants note that, prior *Aguilar*, the Eleventh Circuit interpreted § 1503 broadly,[8] but that after the Supreme Court case, the Eleventh Circuit used a more restrictive interpretation of the statute.  According to defendants, *United States v. Vaghela,* 169 F.3d 729 (11th Cir. 1999), illustrates the post-*Aguilar* standard for the obstruction of "pending proceedings" in the Eleventh Circuit.[9]  In *Vaghela*, the government charged the defendant, an office manager at a medical

---

[7] According to defendants § 1503 is very similar to § 1505, and § 1503 sanctions the same obstructive conduct in judicial proceedings as § 1505 does in administrative proceedings. However, unlike § 1505, § 1503 does not explicitly contain the phrase "pending proceeding." Section 1503 states in part:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b). . . .

18 U.S.C. § 1503(a).  For the text of § 1505, see the "Conclusions of the Court" section of this opinion.

[8] *See, e.g., U.S. v. Fields,* 838 F.2d 1571 (11th Cir. 1988) (finding § 1503 was satisfied by defendant's attempts to convince his friend to give a false statement about an arms sale to an attorney).

[9] However, the court notes, at least one court has disputed *Vaghela*'s relevance to the "pending proceeding" issue:

> Defendants argue that the Eleventh Circuit, in *United States v. Vaghela*, 169 F.3d 729 (11th Cir.1999), narrowly construed the "pending proceedings" element of

center, with obstruction of justice under § 1503 for creating and backdating fraudulent contracts to hide his role in a Medicare scam.  169 F.3d at 731-32.  The FBI investigation that discovered these contracts ultimately led to the defendant's indictment by a grand jury and his conviction on all counts.  *Id.*  Following *Aguilar*, the court reversed the defendant's conviction for conspiracy to obstruct justice under § 1503.  *Id.* at 735.  The Eleventh Circuit held that the defendant did not satisfy the nexus requirement under § 1503 because:

> At the time [the defendant and his accomplice] drew up the contract, there was no grand jury proceeding. Although there had been some FBI investigation--the exact parameters of which were discernable neither from the government's brief nor from the record--into the payments, there is no indication that the pair had reason to anticipate further proceedings, nor that they viewed their own actions as a way to forestall them. They were simply trying to conceal the evidence of their crime.

*Id.*

Defendants assert that other circuits have likewise restricted their previously broad interpretations of § 1503 to accord with the standards given in *Aguilar*.  Defendants draw the court's attention to *United States v. Genao,* 343 F.3d 578 (2nd Cir. 2003).  In *Genao*, the defendant lied to a U.S. Attorney and the FBI about his involvement in a money laundering scheme.  343 F.3d at 579-80.  The Second Circuit affirmed the District Court's dismissal and held that the government could not establish a "nexus" between the defendant's false statements and an actual "proceeding" because the indictment made "no mention of any grand jury or other

---

Section 1503 as no longer including false statements to mere investigators. But, it is unclear where the court construed the "pending proceeding" element at all, as compared to holding that Section 1503 required the government to "demonstrate that the actions the conspirators agreed to take were directly intended to prevent or otherwise obstruct the process of a specific judicial proceeding in a way that is more than merely 'speculative.' " *Id.* at 734-35.

*United States v. Stickle*, 355 F.Supp.2d 1317, 1329  n.11 (S.D. Fla. 2004).

judicial proceeding." *Id.* at 585.  Finally, defendants draw the court's attention to *United States*
*v. Davis,* 183 F.3d 231 (3rd Cir. 1999), where the court found that a wiretap, instituted as part of
criminal investigation undertaken by Customs Service, was not "pending judicial proceeding"
within meaning of §1503, even though it was subject to judicial supervision.  183 F.3d at 239-40.

## 2.    The EPA Inspection.

An essential element of a § 1505 violation, defendants note, is that "there must be a
proceeding pending before a department or agency of the United States."  *United States v. Price,*
951 F.2d 1028, 1031 (9th Cir. 1991).[10]  Defendants argue that the EPA inspection here was not a
"pending proceeding" under any standard.

Defendants compare the present case with *Aguilar* and *Vaghela*.  In *Aguilar*, defendants
argue, the defendant lied during a FBI investigation and a concurrent grand jury investigation, but
the Court nonetheless held that his alleged obstruction of a pending proceeding was
"speculative."  515 U.S. at 601.  In *Vaghela*, defendants note, the defendant falsified documents
during a known FBI investigation, but the Eleventh Circuit held that the alleged obstruction of a
pending proceeding was "merely speculative."  169 F.3d at 735 (quoting *Aguilar*, 515 U.S. at
601).  According to defendants, the nexus between McWane's conduct and its alleged
obstruction of a "pending proceeding" in this case stands on far more tenuous grounds than the
debunked § 1503 charges in *Aguilar* and *Vaghela*.  Even if the EPA initiated an enforcement
proceeding after April of 2000, defendants assert, McWane could not have known that its
representations during a routine inspection would have the "natural and probable" effect of

_____

[10] According to defendants, what constitutes a "pending proceeding" has been determined
to be a question of law.  *United States v. Fruchtman,* 421 F.2d 1019, 1021 (6th Cir. 1970).

obstructing a future administrative proceeding.

Further, defendants contend, even if the Eleventh Circuit does not adopt a "nexus" requirement for § 1505, the government's charge in Count 25 constitutes an unprecedented construction of "pending proceeding."  Prior to *Aguilar*, defendants maintain, the dispute in the Circuits over the scope of "pending proceeding" concerned the point at which an investigation becomes a "proceeding."  According to defendants, no court has interpreted "pending proceeding" to include routine inspections.  Adopting the government's view of "pending proceeding," defendants assert, would mean that any statement made during any EPA, OSHA or FDA inspection could be the basis of a charge of obstruction under § 1505.  Defendants state that courts that have broadly interpreted §§ 1505 or 1503 required, at the very least, an enforcement action or a formal investigation.  *See United States v. Kelley,* 36 F.3d 1118, 1127 (D.C. Cir. 1994) (involving formal investigation by the Inspector General's office); *United States v. Sutton*, 732 F.2d 1483, 1490 (10th Cir. 1984), *cert. denied*, 469 U.S. 1157 (1985) (involving formal Department of Energy investigation including an administrative subpoena); *United States v. Vixie,* 532 F.2d 1277, 1278 (9th Cir. 1976) (involving formal IRS investigation including the issuance of a subpoena).

In this case, defendants contend, the only activity that occurred was a seemingly routine inspection by the EPA, providing no notice to facility personnel that there was any "pending proceeding" under § 1505.  Defendant notes that, in *Aguilar*, the Supreme Court emphasized that courts "traditionally exercised restraint in assessing the reach of a federal criminal statute, both out of deference to the prerogatives of Congress . . . and out of concern that a fair warning should be given to the world in language that the common world will understand, of what the law

11

intends to do if a certain line is passed."  515 U.S. at 600 (internal citations and quotation marks

omitted).  Given all this, defendants conclude, an EPA inspection cannot meet the standard for a

"pending proceeding" under § 1505.

> **D.    The Indictment Does Not Sufficiently Allege that McWane Knew of a Pending Proceeding.**

Even assuming for the sake of argument that the EPA inspection here constituted a

"pending proceeding," defendants argue that McWane cannot be held criminally liable under §

1505 unless it: (i) was aware that the inspection constituted a pending EPA proceeding, and (ii)

"intentionally endeavored corruptly to influence, obstruct or impede [that] proceeding."  *United

States v. Price*, 951 F.2d 1028, 1031 (9th Cir. 1991).  *See also United States v. Williams*, 874

F.2d 968, 977 (5th Cir. 1989) (discussing elements of § 1503).  According to defendants, nothing

in the indictment supports the conclusion that, at the time McWane made the alleged false and

misleading statement, it knew that the routine inspection constituted a pending proceeding or that

its statement would be used in a pending EPA proceeding.

Defendants maintain that, at the time the McWane employee made the alleged false

statement, he was on a tour of the plant with the EPA inspectors, inspecting the water

management system.  At no time, defendants assert, were any of the McWane Pipe employees

aware that any statement they made to the inspectors could be used in a pending proceeding.  *See

Aguilar*, 515 U.S. at 599 (stating that, if a defendant lacks knowledge that his actions are likely to

affect a pending judicial or grand jury proceeding, he necessarily lacks the requisite intent to

obstruct).

In *Aguilar*, defendants assert, even though the defendant knew a grand jury investigation

was pending, his conviction was reversed because there was no evidence that he knew the agents

were going to testify before the grand jury and convey his false statement.  515 U.S. at 600-01.

Here, unlike in *Aguilar*, defendants argue, there is not even a false or misleading statement.

According to defendants, the government alleges that an unknown McWane Pipe employee

provided false and misleading information by stating "that there is sufficient recycling of

wastewater that the facility normally would not have a discharge."  Defendants contend that this

statement is directly taken from an EPA report that was drafted after the conclusion of the

compliance inspection.  However, defendants argue, the indictment fails to allege who

specifically made the statement, to whom it was made or the context in which it was made.

Additionally, defendants argue, the statement in the report does not reflect what was said

by facility personnel during the course of the inspection, as evidence by the notes taken by one of

the EPA inspectors.  Specifically, defendants point out, the notes indicate that the "clarifier is

used as holding tank throughout the day – wastewater is recycled until end of day."  According to

defendants, the statement in the report does not accurately capture what the notes reflect and

cannot form the basis for an obstruction charge.  Defendants maintain that an obstruction charge

cannot be sustained by taking a statement of the defendant out of its immediate context and

giving it a wholly different meaning.[11]

Moreover, defendants assert, the statement itself cannot support the obstruction charge.

The word "normally," defendants argue, is a fundamentally ambiguous term subject to various

interpretations.

**E.      Count 1 of the Indictment Should be Dismissed.**

---

[11] This may not be an appropriate issue at this time because it may be a factual issue.

Defendants note that, in Count 1 of the indictment, the government alleges the following as an object of the conspiracy:

> To corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede, the due and proper administration of law under which a pending proceeding is being had before the EPA, and agency of the United States, in violation of Title 18, United States Code, Sections 1505, 1515(b), and 2.

Defendants argue that the way the government drafted the indictment makes it impossible to know whether, absent the conspiracy to obstruct justice, the grand jury would have indicted on the other prongs of the conspiracy: to violate the CWA, to make a false statement or to defraud. Defendants highlight the following passage from *Russell v. United States*, 369 U.S. 749 (1962):

> To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure.

369 U.S. at 770. According to the defendants, the grand jury's intention here is impossible to discern. Moreover, defendants contend, the court cannot possibly fashion instructions to assure a unanimous verdict on the type of conspiracy charged. Consequently, defendants conclude, to allow the indictment to stand invites severe prejudice to them, and the court should dismiss Count 1.

## II.    The United States Response.

### A.    The Judicially Created "Nexus Requirement" Is Not an Essential Element of § 1505 and Need Not be Pleaded in the Indictment.

Contrary to defendants' assertions that the "nexus requirement" of *Aguilar* is an independent element of an obstruction charge that must be set forth in the indictment, the government contends, it is only a test for evaluating the sufficiency of the evidence at trial. The

14

government argues that factual questions must be left for trial and cannot invalidate a technically

sufficient indictment.  *United States v. Triumph Capital Group, Inc.,* 260 F.Supp.2d 470, 473

(D.Conn. 2003).  In *Triumph*, the defendants were indicted under § 1503 for deleting or

destroying computer files containing documents and information relevant to a grand jury

investigation.  260 F.Supp.2d at 473.  The *Triumph* defendants argued that the indictment was

insufficient because it failed to allege: "(1) that the documents were under subpoena when they

were destroyed, or (2) that [the defendants] knew the grand jury would subpoena the documents."

*Id.*  The *Triumph* court rejected this argument, citing the proposition that "[t]he validity of an

indictment is tested by its allegations, not by whether the government can prove its case. . . . a

technically sufficient indictment 'is not subject to dismissal on the basis of factual questions, the

resolution of which must await trial.'" *Id.* at 472-73 (citing *Costello v. United States*, 350 U.S.

359, 363 (1956), and *United States v. Alfonso*, 143 F.3d 772, 776-77 (2d Cir. 1998)).  The

government highlights the following passage discussing *Aguilar* from *Triumph*:

> Here, the problem with Triumph and Spadoni's argument is that it conflates
> pleading with proof.  Neither *Aguilar* nor *Schwarz* involved the sufficiency of the
> indictment--the issue in both cases was the sufficiency of the evidence. In both
> cases the possibility or hope that the defendant's conduct would influence the
> grand jury was not sufficient to prove that the defendant knew or entertained any
> expectation that his conduct would influence it. But neither case held that the
> nexus requirement, i.e., a relationship in time, causation or logic between the
> conduct and the judicial proceeding, is an element of § 1503 that must be alleged
> in the indictment. To the contrary, as the government contends, the nexus
> requirement must only be proved at trial.

*Id.* at 475 (citations omitted).  *See also United States v. Grossman,* 272 F.Supp.2d 760, 762-63

(N.D. Ill. 2003) (finding that indictment not required to allege that defendant was aware of

pending judicial proceeding at time of obstruction); *United States v. Jackson,* 850 F.Supp. 1481,

15

1495-96 (D. Kan.1994) (stating, "[i]n the Tenth Circuit, it is usually enough for the indictment to track the statute when the statute adequately expresses all of the elements to the offense).[12]

The government contends that Count 25 tracks the language of § 1505, alleges the essential elements of the crime, and incorporates the necessary facts to support the charge. The government asserts that the indictment specifies that defendants' actions were knowing and intentional by alleging that defendants "did corruptly . . . endeavor . . ." The government claims that to act intentionally necessarily encompasses awareness. According to the government, whether under §§ 1503 or 1505, an obstruction charge "modeled on the language of the statute, need not contain technical terms of knowledge and intent if it recites facts and uses language which, taken as a whole, indicate knowledge and intent . . ." *United States v. Haas,* 583 F.2d 216, 218, 220 (11th Cir. 1978) (holding that when an indictment alleged that the defendant "'corruptly did endeavor' to influence a member of a Grand Jury," it necessarily "charg[ed] an intentional act").

---

[12] The government contests defendants' reliance on *United States v. Genao*, 343 F.3d 578 (2nd Cir. 2003). The government draws the court's attention to the following quote from *Genao*:

> We hold that the indictment in the instant case does not set forth a sufficient nexus between Genao's false statements and a federal judicial proceeding so as to establish a violation of § 1503. The indictment itself makes no mention of any grand jury or other judicial proceeding.

343 F.3d at 585. According to the government, the *Genao* court was not seeking a detailed explanation of the "nexus" between the false statement and a judicial proceeding. Rather, the government asserts, the *Genao* indictment failed to plead an essential element of the case – that there was a proceeding. Here, the government points out, the indictment clearly states that a "pending proceeding was being had."

This court notes that, if there is a proof requirement to prove nexus and the government knows that it cannot offer such proof, there would be an ethical requirement to move to dismiss the charge.

16

**B.   The Superseding Indictment Sufficiently Identifies a Nexus Between the Defendant's Conduct and a Pending Agency Proceeding.**

Although the details of the "nexus requirement" are not required in the indictment, the government argues, the indictment here does, in fact, identify a nexus between defendants' actions and the "pending proceeding" before the EPA.  Further, the government maintains that § 1505 case law clearly establishes that a § 308 compliance inspection is a "pending proceeding" for the purposes of an obstruction of justice charge.

**1.   EPA's Investigation Under § 308 of the Clean Water Act is a "Pending Proceeding" before an Agency for Purposes of § 1505.**

The government notes that the compliance inspection at issue here was undertaken pursuant to § 308 of the Clean Water Act, 33 U.S.C. § 1318.[13]  According to the government, this

---

[13]   Section 308 of the Clean Water Act states in part:

Whenever required to carry out the objective of this chapter, including but not limited to (1) developing or assisting in the development of any effluent limitation, or other limitation, prohibition, or effluent standard, pretreatment standard, or standard of performance under this chapter; (2) determining whether any person is in violation of any such effluent limitation, or other limitation, prohibition or effluent standard, pretreatment standard, or standard of performance; (3) any requirement established under this section; or (4) carrying out sections 1315, 1321, 1342, 1344 (relating to State permit programs), 1345, and 1364 of this title--

(A) the Administrator shall require the owner or operator of any point source to (i) establish and maintain such records, (ii) make such reports, (iii) install, use, and maintain such monitoring equipment or methods (including where appropriate, biological monitoring methods), (iv) sample such effluents (in accordance with such methods, at such locations, at such intervals, and in such manner as the Administrator shall prescribe), and (v) provide such other information as he may reasonably require; and

(B) the Administrator or his authorized representative (including an authorized contractor acting as a representative of the Administrator), upon presentation of his credentials--

17

inspection qualifies as a "pending proceeding" under § 1505.  The government asserts that the phrase "pending proceeding" has been defined broadly.  *See United States v. Senffner,* 280 F.3d 755, 761 (7th Cir. 2002) (stating, "[a]n SEC investigation is a 'proceeding'--a term that is defined rather broadly--for the purpose of section 1505"); *United States v. Schwartz*, 924 F.2d 410, 423 (2nd Cir. 1991) (stating "[t]he term 'any proceeding' as used in § 1505 has been defined broadly," and holding that interview by Customs officials during investigation was a "proceeding" under § 1505); *United States v. Abrams,* 427 F.2d 86, 90 (2nd Cir. 1970) (application for voluntary departure made to the Immigration and Naturalization Service was a "proceeding"); *United States v. Fruchtman*, 421 F.2d 1019, 1021 (6th Cir. 1970) (finding "[t]he trial judge correctly held that 'proceeding' is a term of broad scope, encompassing both the investigative and adjudicative functions of a department or agency").  Indeed, the government maintains, a mere preliminary inquiry will constitute a "pending proceeding" where the agency has some adjudicative or investigative authority.  *U.S. v. Kelley,* 36 F.3d 1118, 1127 (D.C. Cir. 1994).

   The government declares that courts have repeatedly held, in a variety of contexts, that

---

   (i) shall have a right of entry to, upon, or through any premises in which an effluent source is located or in which any records required to be maintained under clause (A) of this subsection are located, and
   (ii) may at reasonable times have access to and copy any records, inspect any monitoring equipment or method required under clause (A), and sample any effluents which the owner or operator of such source is required to sample under such clause.

33 U.S.C. § 1318(a) (emphasis added).

investigations performed by agencies are "proceedings."  *See*, *e.g.*, *United States v. Senffner,* 280 F.3d 755, 760-61 (7th Cir. 2002) (SEC investigation was a proceeding); *U.S. v. Kelley,* 36 F.3d 1118, 1127 (D.C. Cir. 1994) (inquiries preliminary to fraud investigation by the Agency for International Development was a "proceeding"); *United States v. Sutton,* 732 F.2d 1483, 1490 (10th Cir. 1984) (Department of Energy investigation was a "proceeding"); *United States v. Browning, Inc.,* 572 F.2d 720, 723-24 (10th Cir. 1978) (Bureau of Customs investigation or inquiry was a "proceeding"); *United States v. Vixie,* 532 F.2d 1277, 1278 (9th Cir. 1976) (IRS investigation including issuance of subpoena was a "proceeding"); *United States v. Fruchtman*, 421 F.2d 1019, 1021 (6th Cir. 1970) (FTC investigation into steel industry pricing was a "proceeding").  *But see United States v. Higgins,* 511 F.Supp. 453, 455 (W.D. Ky. 1981) (FBI investigation did not constitute a proceeding because the FBI had no rule making or adjudicative powers).[14]

---

[14] The *Higgins* court stated:

> Under our system of separation of powers, a criminal investigatory agency, in contradistinction to an administrative or regulatory agency, has no power to engage in rulemaking or adjudication. The Court is convinced, after careful examination of the case law and pertinent legislative history, that the meaning of "proceeding" in s 1505 must be limited to actions of an agency which relate to some matter within the scope of the rulemaking or adjudicative power vested in the agency by law. Since the F.B.I. has no rulemaking or adjudicative powers regarding the subject matter of this indictment, its investigation was not a "proceeding" within the meaning of the statute.

511 F.Supp. at 455.  *Higgins* was discussed in *United States v. Persico,* 520 F.Supp. 96 (E.D. N.Y., 1981), where the court stated:

> Persico moves to dismiss count six of the indictment, which alleges that defendant violated 18 U.S.C. s 1505 by seeking to obstruct an Internal Revenue Service investigation of Christopher Furnari by offering money to Annicharico to induce him to influence the investigation.

Given this case law, the government argues, the EPA's compliance inspection in this case was clearly a "pending proceeding."  The government points out that, like the other agencies discussed in the above cited cases, the EPA has adjudicative, rule-making and investigative powers.  Examples of its authority to adjudicate include: 33 U.S.C. § 1319(g) (administrative penalties under the Clean Water Act); 42 U.S.C. § 7413(d) (administrative penalties under the Clean Air Act); and 42 U.S.C. § 9609(a)(1) (administrative penalties under the CERCLA).  Examples of its rule-making authority include: 33 U.S.C. § 1312, 1314, 1316, and 1317 (Clean Water Act); 42 U.S.C. § 7411(d)(1) (Clean Air Act); and 42 U.S.C. § 9602(a) (CERCLA).  Examples of the EPA's investigative powers include: 33 U.S.C. § 1318 (Clean Water Act); 42 U.S.C. § 7414 (Clean Air Act); and 42 U.S.C. § 9604(e) (CERCLA).

According to the government, the April 2000 EPA inspection at issue here was conducted pursuant to § 308 of the Clean Water Act, 33 U.S.C. § 1318.  That provision, the government contends, grants the EPA wide authority to obtain information and conduct inspections relating to compliance with the Clean Water Act.  33 U.S.C. § 1318(a).  In addition, the government

_____

. . .

Persico contends that the investigation of Furnari was not an agency "proceeding" under 18 U.S.C. s 1505 because it was exclusively criminal, and any resulting adjudication could be made only by a court. He relies primarily on *United States v. Higgins*, 511 F.Supp. 453 (W.D.Ky.1981). There, a police chief allegedly corruptly used his position to alert the subject of an investigation by the Federal Bureau of Investigation ("F.B.I.") that he was under surveillance by undercover agents. The court dismissed the indictment . . .

The I.R.S., unlike the F.B.I., has rulemaking powers. 26 U.S.C. s 7805. Thus, under the reasoning of the Higgins case, the criminal investigation of Furnari was an agency "proceeding" within the scope of the I.R.S.'s rulemaking powers.

520 F.Supp. at 101.

contends, violators of § 308 are subject to a full panoply of enforcement actions by the EPA, including compliance orders;[15] and administrative,[16] civil[17] and criminal[18] penalties.  Given that there are express penalties for § 308 violations, the government concludes that the compliance inspection here was a "pending proceeding."  *See United States v. Wright*, 704 F.Supp. 613, 615 (D. Md. 1989) (stating that, when an agency has adjudicating or rulemaking authority, "it is immaterial that the obstruction occurred in the course of an investigation, rather than during an adjudicative or rule-making proceeding").

The government claims that *United States v. Technic Services, Inc.*, 314 F.3d 1031 (9th Cir. 2002), cited by defendants, actually supports its argument that an EPA inspection can form the basis for a § 1505 charge.  The government highlights the following passage:

> An investigation into a possible violation of the Clean Air Act or Clean Water Act, which could lead to a civil or criminal proceeding, 42 U.S.C. § 7413(b), (c); 33 U.S.C. § 1319(b), (c), is a kind of proceeding, *see United States v. Vixie*, 532 F.2d 1277, 1278 (9th Cir.1976) (per curiam) ("An administrative investigation is a 'proceeding' within the meaning of 18 U.S.C. § 1505.").

314 F.3d at 1044.

The government also addresses defendants' complete reliance on case law interpreting § 1503.  While §§ 1503 and 1505 are similar in many respects, the government asserts, they are different in regard to the type of proceedings they address.  Whereas § 1503 refers to proceedings "before any United States magistrate judge or other committing magistrate" or before a grand

---

[15] 33 U.S.C. § 1319(a).

[16] 33 U.S.C. § 1319(g).

[17] 33 U.S.C. § 1319(b).

[18] 33 U.S.C. § 1319(c).

jury, the government notes that § 1505 refers to proceedings "being had before any department or agency of the United States." According to the government, the Eleventh Circuit has suggested that the nexus requirement under § 1505 must be analyzed differently than the nexus requirement under § 1503.[19] Therefore, the government argues, the court should look to cases dealing specifically with the definition of "pending proceeding" in § 1505 in determining whether the EPA's inspection qualifies.

The government next addresses defendants' argument that the EPA inspection here was a "routine inspection." The defendants claim that if the inspection here is held to be a "pending proceeding" then any statement made during any EPA, OSHA or FDA inspection could lead to a charge under § 1505. The government claims this argument is flawed for two reasons: (1) the agency visit here was not a "routine inspection" but a comprehensive two-day compliance

_____

[19] The government points to the following note from *United States v. Veal,* 153 F.3d 1233 (11th Cir. 1998) to support this contention:

> In § 1505, the federal interest derives from the nature of the affected proceeding, a federal agency or congressional committee, but the statute does not require that a proceeding be pending or contemplated. The federal interest in § 1511 stems from the nature of the affected activity, state-regulated gambling enterprises, but there is no requirement of either an ongoing or imminent state or federal proceeding. In the second and third clauses of § 1503, the federal interest originates from the status of the targeted person, a federal juror, but no judicial proceeding is required. In §§ 1512(a)(1)(A)-(B), (b)(1), and (b)(2)(A)-(D), the federal interest is the status of the targeted person, potential witnesses in "official proceedings," but the statute expressly states that the proceeding "need not be pending or about to be instituted at the time of the offense." 18 U.S.C. § 1512(e)(1); *see United States v. Kelley,* 36 F.3d 1118, 1128 (D.C.Cir.1994) (concluding that, even where the statute requires proof of an "official proceeding," § 1512(e)(1) provides that the jury need only be able to infer reasonably that a criminal investigation, including a grand jury proceeding, might be instituted, not that one is pending or is about to be initiated when the obstructive conduct occurred).

153 F.3d at 1250 n.24.

22

inspection conducted under the specific authority of § 308 of the Clean Water Act; and (2) this

very argument was considered and rejected by the Tenth Circuit Court of Appeals.[20]

 The government further disputes defendants' assertions that courts have required at least

an enforcement action or formal investigation before finding a pending proceeding.  According to

the government, defendants' reliance on *United States v. Kelley*, 36 F.3d 1118 (D.C. Cir. 1994)

---

[20] The government relies on *United States v. Browning, Inc.*, 572 F.2d 720 (10th Cir. 1978) to support this contention.  The *Browning* court stated:

> The indictment alleged that between December 1970, and August 1975, the District Director of Customs Service at St. Louis conducted an investigation into the practices of the Browning Arms Company and that the individual defendant Browning, as agent for the corporate defendants, counseled, advised and suggested that the two foreign companies, the Japanese company and the Belgian company, were to give false answers when questioned by Customs officers.

> The government's theory is that the "proceeding" commenced when the importer submitted an Entry Form and the Customs Service started the process of evaluating the goods.

> The thesis of the defendants, on the other hand, is that the meaning advocated by the government is far too broad. To so construe it would have the effect of making all of the acts of the Customs Service a "proceeding."

572 F.2d at 723.  After discussing case law on the issue, the court concluded:

> In sum, the term "proceeding" is not, as one might be inclined to believe, limited to something in the nature of a trial. The growth and expansion of agency activities have resulted in a meaning being given to "proceeding" which is much more inclusive and which no longer limits itself to formal activities in a court of law. Rather, the investigation or search for the true facts such as that which is described in the indictment here is not to be ruled as a non-proceeding simply because it is preliminary to indictment and trial.

> We conclude that it was error for the trial court to determine that the Customs officials were not involved in a proceeding and in concluding that Counts I and II should be dismissed.

*Id.* at 724.

in support of this argument is misplaced.  The government contends that *Kelley* merely states that

the authority to conduct adjudications and issue subpoenas was relevant to the "pending

proceeding" issue.  The *Kelley* court, according to the government, did not hold that initiation of

subpoenas or adjudicative proceedings were required for a pending proceeding.[21]  The

---

[21] The *Kelley* court stated:

> Kelley argues that § 1505 applies only to adjudicatory or rule-making activities,
> and does not apply to wholly investigatory activity. Although this Court has not
> previously addressed this issue, we hold that the formal investigation opened by
> the Office of the Inspector General of AID was a "proceeding" within the meaning
> of § 1505.
>
> On several occasions, other courts have held that agency investigative activities
> are proceedings within the scope of § 1505. *See, e.g., United States v. Sutton*, 732
> F.2d 1483, 1490 (10th Cir.1984); *United States v. Vixie*, 532 F.2d 1277, 1278 (9th
> Cir.1976); *United States v. Batten*, 226 F.Supp. 492, 493 (D.D.C.1964), *cert.
> denied*, 380 U.S. 912, 85 S.Ct. 898, 13 L.Ed.2d 799 (1965), *reh'g denied*, 381
> U.S. 930, 85 S.Ct. 1557, 14 L.Ed.2d 688 (1965). In those cases, the investigations
> typically have involved agencies with some adjudicative power, or with the power
> to enhance their investigations through the issuance of subpoenas or warrants. *See
> Sutton*, 732 F.2d at 1490 (Department of Energy investigation including issuance
> of administrative subpoena was proceeding under § 1505); *Vixie*, 532 F.2d at 1278
> (IRS investigation including issuance of subpoena was a proceeding under §
> 1505); *Batten*, 226 F.Supp. at 493 (SEC investigation with authority to issue
> subpoenas and administer oaths was "proceeding" under § 1505).
>
> For an investigation to be considered a proceeding, then, it must be more than a
> "mere police investigation." See *Batten*, 226 F.Supp. at 493. In *Batten*, the court
> explained that the SEC's authority to issue subpoenas and administer oaths in
> conjunction with its investigations made an SEC investigation a § 1505
> proceeding. *Id.*; *cf. United States v. Higgins*, 511 F.Supp. 453 (W.D.Ky.1981)
> (because FBI was not vested with rule making or adjudicative power related to
> subject of indictment, its investigation was not a proceeding under § 1505).
>
> The Inspector General's office of AID is charged with the duty of supervising
> investigations relating to the proper operation of the agency. See 5 U.S.C.App. 3 §
> 2. In addition, the Inspector General is empowered to issue subpoenas and to
> compel sworn testimony in conjunction with an investigation of agency activities.
> Accordingly, the Inspector General's inquiries, albeit preliminary, constitute a

government asserts that the Tenth Circuit expressly held that the initiation of "formal

procedures" are not required to find a "pending proceeding:"

> It is to be noted that 19 U.S.C. s 1509 provides for Customs officers to cite
> importers and others to appear to testify under oath regarding imported
> merchandise. These formal procedures are not reached in this investigation. At the
> same time, we do not see that the use of this machinery would have made the
> proceeding more like a "proceeding" simply by virtue of the issuing of a subpoena
> formally or the giving notice of a preliminary investigation.

*Browning*, 572 F.2d at 724.  Defendants also point to the following passage from *United States v.*

*Sutton,* 732 F.2d 1483 (10th Cir. 1984):

> First, defendant argues that the government introduced insufficient evidence to
> prove, as it must under 18 U.S.C. § 1505, that a proceeding of a department or
> agency of the United States was pending at the time of the alleged obstruction. . . .
> Agency investigative activities are "proceedings" within the meaning of § 1505.
> *United States v. Browning, Inc.*, 572 F.2d 720, 723 (10th Cir.), *cert. denied*, 439
> U.S. 822, 99 S.Ct. 88, 58 L.Ed.2d 114 (1978). Defendant argues that there was no
> "proceeding" pending because the time for compliance with the subpoena had
> passed by the time of the alleged obstruction. We disagree. It would be absurd to
> conclude that someone could end a "proceeding" simply by failing to timely
> comply with a subpoena.

732 F.2d at 1490.

> **2.**     **The Defendants' Misrepresentations to the EPA's Inspectors Had the
> "Natural and Probable" Effect of Interfering with a Pending EPA
> Proceeding of Which McWane Was Aware.**

The government notes that, in *Aguilar*, the Supreme Court described an act as having a

natural and probable effect on a proceeding if it has a "relationship in time, causation, or logic

with the . . . proceedings."  515 U.S. at 599.  Consequently, the government asserts, a defendant

may be found guilty under § 1505 if his acts are performed in an effort to obstruct a future

_____

"proceeding" within the meaning of § 1505.

36 F.3d at 1127.

proceeding, as well as proceedings already underway. *See United States v. Abbell*, 271 F.3d 1286, 1301 (11th Cir. 2001) (stating "the requirement that defendants' acts have the natural and probable effect of interfering with the due administration of justice is not so narrow as to exclude efforts to obstruct <u>specific</u> future judicial proceedings" (citations and punctuation omitted) (emphasis added)). The government maintains that courts have held that a defendant's actions may serve as proof that the defendant knows of a pending proceeding or the possibility of a future proceeding. *See United States v. Senffner,* 280 F.3d 755, 762 (7th Cir. 2002) (finding defendant's actions were proof he knew of SEC investigation). Importantly, the government claims, a defendant's actions need not actually obstruct the agency proceeding; it is enough to "demonstrate his intent to do something that has the natural and probable effect of obstructing" the proceeding. *United States v. Muhammad,* 120 F.3d 688, 695 (7th Cir. 1997).

According to the government, the defendants' actions, as alleged in the indictment, show that they intended to do something that had the natural and probable effect of obstructing a pending EPA proceeding. The government points to the EPA inspector's notes indicating that defendants asserted that "there is sufficient recycling of waste water that the facility normally would not have a discharge." As the opposite was true, the government contends, this statement misled the inspectors. The government contends that the EPA's § 308 inspection focused on water pollution issues. Therefore, the government argues, it is hard to imagine a statement more central to those issues than one that concerns the frequency of discharges of polluted wastewater.

The government asserts that the purpose of the compliance inspection was obviously to detect violations of the Clean Water Act. In this case, the government contends, if the EPA inspectors' investigation had discovered a violation of the Clean Water Act, further proceedings

would have been held and may have resulted in an order to comply with that Act, a civil action, or criminal penalties. *See* 33 U.S.C. § 1319. According to the government, defendants intended to prevent the continuation of EPA proceedings. The government maintains there would be no other reason for defendants to provide the EPA with information that they clearly knew to be false or to fail to produce accurate information. Therefore, the government concludes, there was a casual relationship between defendant's actions and EPA proceedings, satisfying the nexus requirement of *Aguilar*.

### C.   Count 1 Should Not be Dismissed Because It Is Separate and Distinct from Count 25 and is Independently Valid.

The government contest defendant's argument that Count 1 should be dismissed. According to the government, the "pending proceeding" issue has no substantial bearing on the conspiracy to violate 18 U.S.C. § 1505 charged in Count 1.

The government notes that courts have consistently held that "[c]onspiracy and the substantive offense that is the object of the conspiracy are separate and distinct crimes." *United States v. Hernandez,* 141 F.3d 1042, 1052 (11th Cir. 1998). "The elements of the offense of conspiracy are (1) an agreement between the defendant and one or more persons, (2) the object of which is to do either an unlawful act or a lawful act by unlawful means." *United States v. Vaghela,* 169 F.3d 729, 732 (11th Cir. 1999). Accordingly, the government argues, it is not necessary that every element of 18 U.S.C. § 1505 be satisfied in order to find defendants guilty of conspiracy to violate § 1505. Instead, the government contends, it is necessary only that defendants had an agreement to obstruct justice by interfering with an agency proceeding and that at least one of the conspirators committed an overt act in furtherance of the object of the

27

conspiracy.  *See United States v. Hernandez,* 141 F.3d 1042, 1052-53 (11th Cir. 1998).  The

government notes that, applying these established principles, the Third Circuit rejected the

argument than an indictment for conspiracy to obstruct justice was defective because it failed "to

charge that a federal judicial proceeding was pending or imminent at the time the alleged

conspiracy was formed."  *United States v. Messerlian,* 832 F.2d 778, 792 (3rd Cir. 1987)

(abrogated on other grounds by *Graham v. Connor,* 490 U.S. 386 (1989)).  As the indictment

charges the elements of a conspiracy to violate § 1505 and gives factual support for each element,

the government argues, Count 1 should not be dismissed.

## CONCLUSIONS OF THE COURT

In part, 18 U.S.C. §1505 states as follows:

> . . .
>
> Whoever corruptly, or by threats or force, or by any threatening letter or
> communication influences, obstructs, or impedes or endeavors to influence,
> obstruct, or impede the due and proper administration of the law under which <u>any
> pending proceeding</u> is being had before any department or agency of the United
> States, or the due and proper exercise of the power of inquiry under which any
> inquiry or investigation is being had by either House, or any committee of either
> House or any joint committee of the Congress--
>
> Shall be fined under this title, imprisoned not more than 5 years or, if the offense
> involves international or domestic terrorism (as defined in section 2331),
> imprisoned not more than 8 years, or both.

(emphasis added).

The Eleventh Circuit has not directly construed the meaning of "pending proceeding"

under § 1505.  *United States v. Stickle*, 355 F.Supp.2d 1317, 1329 n.11 (S.D. Fla. 2004).  Further,

neither the parties' nor the court's own research has revealed any case bearing directly on the

issue of whether an EPA compliance inspection conducted under the Clean Water Act constitutes

a "pending proceeding" under § 1505.[22]

The Eighth Circuit significantly discussed of the meaning of "proceeding" in § 1505 in

*Rice v. United States*, 356 F.2d 709 (8th Cir. 1966):

> Since withdrawal of the second charges, no further action was presented to or taken by the Labor Board. A crucial question is presented as to whether, within [the] meaning of § 1505, there was a proceeding pending before the Labor Board, so as to constitute a basis for criminal indictment. For reasons hereinafter stated, we hold that there was a proceeding pending before the Labor Board.

> Defendants argue that the indictment does not allege an offense, as only a charge, as opposed to a formal complaint by the general counsel, had been filed before the Labor Board; thus, it is maintained there was no 'proceeding pending' before the Board.

> The Government counters with the assertion that the Board's regulations demonstrate that a 'proceeding' was pending and additionally submit that the requirement of a pending proceeding under § 1505 is not applicable since the defendants were convicted for a conspiracy to violate the criminal statute rather than the substantive crime.

> On this issue, the answer lies in the meaning of the term 'proceeding' as used by the Congress in the enactment of § 1505. In construing statutes, this court will give the words of the statute their plain meaning unless there is a compelling reason to ascribe some different meaning to the language used by Congress. We said in *Sternberg Dredging Co. v. Walling,* 158 F.2d 678, 681 (8th Cir. 1946):

>> 'In the interpretation of a statute its words are to be taken according to the meaning given them in common useage, unless to do so produces an absurd result or one which defeats the purpose for which the act was passed.'

> 'Proceeding' is a comprehensive term meaning the action of proceeding-- a particular step or series of steps, adopted for accomplishing something. This is the dictionary definition as well as the meaning of the term in common parlance. Proceedings before a governmental department or agency simply mean proceeding

---

[22] *United States v. Technic Services, Inc.,* 314 F.3d 1031 (9th Cir. 2002), involved EPA proceedings under the Clean Water Act and the Clean Air Act.  However in *Technic*, the court found that defendants' conduct "was under <u>investigation</u> by the EPA at the relevant time." 314 F.3d at 1044 (emphasis added).

> in the manner and form prescribed for conducting business before the department
> or agency, including all steps and stages in such an action from its inception to its
> conclusion.
>
> In our view, it would be absurd to hold that Congress meant to proscribe
> interference with the administrative process only after a Labor Board proceeding
> had reached a certain formal stage and let go unpunished individuals who obstruct
> earlier preliminary proceedings by frightening witnesses into withdrawing charges
> out of fear for their lives. Congress clearly intended to punish any obstruction of
> the administrative process by impeding a witness in any proceeding before a
> governmental agency-- at any stage of the proceedings, be it adjudicative or
> investigative. Congress did not limit the term 'proceeding' as used in § 1505 to
> only those acts committed after a formal stage was reached, and we cannot so
> limit the term.

356 F.2d at 712.  Despite the broad scope given to "proceeding" in *Rice*, the court notes that an

agency "proceeding" generally revolves around a decision that must be made regarding some

issue within an agency's control.  Often such issues involve whether a party should be punished

for violating the agency's regulations.  Such decisions are often made after some sort of hearing

is held, during which the evidence on the issue is presented and construed.  It is certainly

questionable whether an inspection fits within this construction of "proceeding."  It is significant,

however, that an EPA compliance inspection, such as the one here, could lead the EPA to take

adverse actions against the inspected party.  Such adverse actions include the issuing of

compliance orders;[23] and administrative,[24] civil[25] and criminal[26] penalties.

---

[23] The FDA can issue compliance orders under 33 U.S.C. § 1319(a), which states in part:

> Whenever on the basis of <u>any information available to him</u> the Administrator
> finds that any person is in violation of section 1311, 1312, 1316, 1317, 1318,
> 1328, or 1345 of this title, or is in violation of any permit condition or limitation
> implementing any of such sections in a permit issued under section 1342 of this
> title by him or by a State or in a permit issued under section 1344 of this title by a
> State, he shall issue an order requiring such person to comply with such section or
> requirement, or he shall bring a civil action in accordance with subsection (b) of
> this section.

Only a biased advocate can argue that the law is clear, one way or the other, as to whether (1) there was a "proceeding" or (2) whether the proceeding was "pending."  There are reasonable arguments both ways.

---

33 U.S.C. § 1319(a)(3) (emphasis added).

[24] Administrative penalties under the Clean Water Act are governed by 33 U.S.C. § 1319(g), which states in part:

> Whenever on the basis of any information available--
>
> (A) the Administrator finds that any person has violated section 1311, 1312, 1316, 1317, 1318, 1328, or 1345 of this title, or has violated any permit condition or limitation implementing any of such sections in a permit issued under section 1342 of this title by the Administrator or by a State, or in a permit issued under section 1344 of this title by a State, or
>
> (B) the Secretary of the Army (hereinafter in this subsection referred to as the "Secretary") finds that any person has violated any permit condition or limitation in a permit issued under section 1344 of this title by the Secretary,
>
> the Administrator or Secretary, as the case may be, may, after consultation with the State in which the violation occurs, assess a class I [$25,000 or less] civil penalty or a class II [$125,000 or less] civil penalty under this subsection.

33 U.S.C. § 1319(g)(1).

[25] The FDA can seek civil penalties from violators under 33 U.S.C. § 1319(b), which states:

> The Administrator is authorized to commence a civil action for appropriate relief, including a permanent or temporary injunction, for any violation for which he is authorized to issue a compliance order under subsection (a) of this section. Any action under this subsection may be brought in the district court of the United States for the district in which the defendant is located or resides or is doing business, and such court shall have jurisdiction to restrain such violation and to require compliance. Notice of the commencement of such action shall be given immediately to the appropriate State.

[26] Criminal penalties under the Clean Water Act are governed by 33 U.S.C. § 1319(c), which provides different levels of punishment for negligent and knowing violations.

31

Among the factors supporting the government's position may be: (1) The EPA has both adjudicative and rule making authority; and (2) The cited cases which have dealt with "investigations" have generally held the investigations to be "proceedings" if the agency has adjudicative and rule making authority.  The only apparent substantive difference between an "inspection" and an "investigation" may be whether the inspection was a routine or regular inspection or whether it was spawned by some specific notice of violation(s) and had, thus, become an investigation.

Among the factors supporting the defendants' position may be 33 U.S.C. § 1319(a)(1), which states:

> Whenever, on the basis of any information available to him, the Administrator finds that any person is in violation of any condition or limitation which implements section 1311, 1312, 1316, 1317, 1318, 1328, or 1345 of this title in a permit issued by a State under an approved permit program under section 1342 or 1344 of this title, he shall proceed under his authority in paragraph (3) of this subsection or he shall notify the person in alleged violation and such State of such finding. . . .

(emphasis added).  Subsection (a)(3) of 33 U.S.C. § 1319 states:

> Whenever on the basis of any information available to him the Administrator finds that any person is in violation of section 1311, 1312, 1316, 1317, 1318, 1328, or 1345 of this title, or is in violation of any permit condition or limitation implementing any of such sections in a permit issued under section 1342 of this title by him or by a State or in a permit issued under section 1344 of this title by a State, he shall issue an order requiring such person to comply with such section or requirement, or he shall bring a civil action in accordance with subsection (b) of this section.

The question thus becomes whether the "proceeding" begins with the inspection or after the Administrator "finds" that "any person" is in violation.  In other words, does a proceeding lead to the finding or does the finding lead to a proceeding?

The court notes the following with reference to the basic language issues: Webster's Ninth New Collegiate Dictionary defines "proceeding" as a "legal action." Obviously, there was no "legal action" here. On the other hand, the same dictionary also defines "proceeding" as "events," "happenings," "transaction," and "an official record of things said or done."

Among the definitions of "proceeding" in Black's Law Dictionary are:

> 1. The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment. 2. Any procedural means for seeking redress from a tribunal or agency. 3. <u>An act or step that is part of a larger action</u>. 4. The <u>business conducted</u> by a court <u>or other official body</u>; a hearing. 5. *Bankruptcy*. A particular dispute or matter arising within a pending case -- as opposed to the case as a whole. [Cases: Bankruptcy 2156. C.J.S. *Bankruptcy* § 26.]
>
>> " 'Proceeding' is a word much used to express the business done in courts. A proceeding in court is an act done by the authority or direction of the court, express or implied. It is more comprehensive than the word 'action,' but it may include in its general <u>sense all the steps taken or measures adopted in the prosecution</u> or defense of an action, including the pleadings and judgment. As applied to actions, the term 'proceeding' may include -- (1) the institution of the action; (2) the appearance of the defendant; (3) all ancillary or provisional steps, such as arrest, attachment of property, garnishment, injunction, writ of *ne exeat*; (4) the pleadings; (5) the taking of testimony before trial; (6) all motions made in the action; (7) the trial; (8) the judgment; (9) the execution; (10) proceedings supplementary to execution, in code practice; (11) the taking of the appeal or writ of error; (12) the remittitur, or sending back of the record to the lower court from the appellate or reviewing court; (13) the enforcement of the judgment, or a new trial, as may be directed by the court of last resort." Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 3-4 (2d ed. 1899).

Black's Law Dictionary 1241 (8th ed. 2004) (emphasis added). Except for the emphasized portions, these definitions would tend to suggest that no "proceeding" was involved here.

One thing is clear. This issue can ultimately be decided with certitude only by those blessed with the ability to be final, not necessarily infallible. This court can only search for a

reasonable answer.

This court ultimately concludes as follows.  The defendants have referred to the purported pending proceeding as being only a "routine inspection" to distinguish it from being an "investigation."  This court will deny the motion to dismiss, but will submit the factual issue to the jury as to whether the subject review was an "investigation" based upon specific prior information that called for an investigation or merely a "routine inspection" not based upon prior specific information.[27]

The court notes that a conviction will require a finding that the alleged "false and misleading information" was given "corruptly."  Further that the defendant either obstructed, etc. or endeavored to influence, etc.  The Eleventh Circuit Pattern Criminal Jury Instructions state:

> To act "corruptly" means to act knowingly and dishonestly with the specific intent to influence, obstruct or impede the due administration of justice.

That will be a rather stringent requirement of proof.  Since there is no clear purely legal meaning of "proceeding" in the context of § 1505, the factual determination by the jury will be controlling.

If either party is later able to provide the court with specific controlling or persuasive circuit court authority, the court will reconsider.[28]

This 24th of March, 2005.

_Robert B. Propst_

---

[27] The parties may suggest other instructions in this regard.

[28] Of course, both sides have a duty to inform the court if such cases arise.

_____
**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**