UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | CR-04-PT-0199-S |
| | ) | |
| McWANE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This cause comes to be heard upon defendant Charles "Barry" Robison's Motion in Limine to Preclude the Government from Using his Notebooks Against Him at Trial, filed on April 28, 2005. This motion involves notebooks in which Robison recorded both personal information[1] and work-related facts concerning his role at McWane Cast Iron Pipe. Robison acknowledges that the government has chosen to excerpt for trial only the business-related entries in the notebooks. Nevertheless, Robison argues, to the extent the notebooks contained work-related comments, those comments were not required to conduct his duties at McWane and, thus, the notebooks remained his personal records. As such, Robison concludes, the notebooks cannot be used against him without violating his Fifth Amendment right against self-incrimination.

Robison relies heavily on *Boyd v. United States*, 116 U.S. 616 (1886), in which the Supreme Court interpreted the Fifth Amendment as prohibiting "any forcible and compulsory

---

[1] According to Robison's Motion, the notebooks contain information about personal loans, life insurance, barber appointments, etc.

1

extortion of a man's own testimony, or of his private papers to be used as evidence to convict him of crime . . ." 116 U.S. at 630.[2]  Robison asserts that the Supreme Court has not overturned this holding from *Boyd*.  However, there is some disagreement among the Circuit Courts of Appeals regarding this issue.

In *In re Grand Jury Investigation U.S. Attorney Matter No. 89-4-8881-J,* 921 F.2d 1184 (11th Cir. 1991), the Eleventh Circuit addressed the disagreement among courts, but refused to directly rule on the continued validity of *Boyd*.  The court stated:

> The government also argues, somewhat obliquely, that *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) "at least tacitly recognizes that even personal records and notations are not immune from scrutiny, or production." Brief of Appellee at 13-14. We recognize that *Andresen* and later cases represent a shift in Fifth Amendment jurisprudence from the privacy based rationale of *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), to the idea that records "voluntarily committed ... to writing," *Andresen* 427 U.S. at 473, 96 S.Ct. at 2745, are not compelled testimony. However, although a few circuits have held that even personal papers are subject to this new rationale, *see, e.g., In re Sealed Case*, 877 F.2d 83, 84 (D.C.Cir.1989) (Fifth Amendment privilege not applicable to the contents of any voluntarily prepared records, including personal ones), *cert. denied sub. nom., Roe v. United States*, 493 U.S. 1044, 110 S.Ct. 839, 107 L.Ed.2d 834 (1990); *In re Grand Jury Proceedings on February 4, 1982*, 759 F.2d 1418 (9th Cir.1985) (same), this circuit has not yet addressed the remaining vitality of *Boyd* with regard to personal documents. The Supreme Court's own reluctance to overrule *Boyd*, *see In re Grand Jury Subpoena Duces Tecum, May 9, 1990*, 741 F.Supp. 1059, 1068 (S.D.N.Y.1990), and the government's failure to press this point here counsel in favor of continuing to leave this question open in this circuit.

921 F.2d at 1187 n.6.

---

[2] Robison further argues that the government could not bring a civil case against him to force him to relinquish his private writings.  According to Robison, a civil proceeding would be "in substance and effect a criminal one," and an "invasion of his indefeasible right of personal security, personal liberty, and private property."  *Boyd*, 116 U.S. at 630, 634.  Robison contends that, because the government could not force him to relinquish his personal notebooks directly, it enlisted his employer, McWane, to do so indirectly when it subpoenaed the notebooks from the company on July 8, 2003 and December 17, 2003.

Robison draws the court's attention to *United States v. (Under Seal),* 745 F.2d 834 (4th Cir. 1984), *vacated as moot by United States v. Doe No. 462*, 471 U.S. 1001 (1985), in which the Fourth Circuit held, "in line with *Boyd*, that the fifth amendment prevents the government from subpoenaing an individual's incriminating papers that are in his possession and are held by him in an individual, as opposed to representative capacity." 745 F.2d at 840.[3] Robison also highlights *In re Grand Jury Proceedings,* 632 F.2d 1033 (3rd Cir. 1980), in which the court held that "[t]he fifth amendment respects a private inner sanctum of individual feeling and thought and proscribes state intrusion to extract self-condemnation" 632 F.2d at 1043. In that case, the Third Circuit stated:

> This can hardly be characterized as novel. It is a firmly embedded tenet of American constitutional law that the fifth amendment absolutely protects an accused from having to produce, under government compulsion, self-incriminating private papers. As the Supreme Court has said "the Fifth Amendment privilege against compulsory self-incrimination protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony." *Bellis v. United States*, 417 U.S. 85, 87, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1975). *See, e. g., United States v. Calandra*, 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974); *Couch v. United States*, 409 U.S. 322, 330, 93 S.Ct. 611, 616, 34 L.Ed.2d 548 (1972); *United States v. White,* 322 U.S. 694, 699 & 701, 64 S.Ct. 1248, 1252, 88 L.Ed. 1542 (1943); *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886).
> No case has held to the contrary. In *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the Supreme Court held that production of an accountant's papers did not violate the taxpayer's fifth amendment rights. Plainly, the question whether the compelled production of the taxpayer's own papers would have violated his fifth amendment was not before the *Fisher* court. The fifth amendment doctrine protecting an accused from producing incriminating

---

[3] According to Robison, his notebooks were both in his possession and held by him in his individual capacity. In support of this contention, Robinson points to a letter to the government's attorneys from J. Alan Truitt. The letter indicates that the notebooks submitted by McWane "belong to" Robison. However, the court notes that, in his Motion, Robison admits that he allowed McWane's counsel to remove the documents from his office. As such, it appears the notebooks were no longer in his possession at the time they were produced to the government.

> private papers manifests its vitality by virtue of the *Fisher* court's explicit efforts to distinguish its facts from the facts in *Boyd*, 425 U.S. at 414, 96 S.Ct. at 1582.

*Id.* at 1042-43 (footnote omitted).

Finally, Robison relies on *Grand Jury Subpoena Duces Tecum Dated April 23, 1981 Witness v. United States,* 657 F.2d 5 (2nd Cir. 1981), in which the Second Circuit stated:

> On the one hand, the Fifth Amendment protects individuals from government compelled production of personal documents. *Bellis v. United States*, 417 U.S. 85, 87, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974); *United States v. White*, 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944); *Wilson v. United States*, 221 U.S. 361, 377-78, 31 S.Ct. 538, 543, 55 L.Ed. 771 (1911); *Boyd v. United States*, 116 U.S. 616, 630, 633-35, 6 S.Ct. 524, 533-534, 29 L.Ed. 746 (1886). On the other hand, the privilege against self-incrimination does not extend to the records or documents of a corporation or association. *Bellis v. United States*, 417 U.S. 85, 88, 94 S.Ct. 2179, 2183, 40 L.Ed.2d 678 (1974); *United States v. White*, 322 U.S. 694, 699-701, 64 S.Ct. 1248, 1251-1252, 88 L.Ed. 1542 (1944); *Grant v. United States*, 227 U.S. 74, 79-80, 33 S.Ct. 190, 192, 57 L.Ed. 423 (1913); *Wheeler v. United States*, 226 U.S. 478, 490, 33 S.Ct. 158, 162, 57 L.Ed. 309 (1913); *Wilson v. United States*, 221 U.S. 361, 377-78 (1911).

657 F.2d at 6. In that case, the Second Circuit gave the following criteria for use in determining if a document is a personal or corporate record: (1) who prepared the document; (2) the nature of its contents; (3) its purpose or use; (4) who maintained possession and who had access to it; (5) whether the corporation required its preparation; and (6) whether its existence was necessary to

the conduct of the corporation's business.[4]  *Id.* at 8.[5]

The cases relied upon by Robison are at least somewhat distinguishable from the present situation.  In *United States v. (Under Seal),* 745 F.2d 834 (4th Cir. 1984), the government was appealing an order "quashing, on fifth amendment grounds, a portion of a grand jury subpoena directing appellee to produce specified records and papers held by him in an individual capacity." 745 F.2d at 835.  Similarly, *In re Grand Jury Proceedings,* 632 F.2d 1033 (3rd Cir. 1980), was an appeal of an "order partially quashing a subpoena duces tecum on fifth amendment grounds." 632 F.2d at 1036.  *Grand Jury Subpoena Duces Tecum Dated April 23, 1981 Witness v. United States,* 657 F.2d 5 (2nd Cir. 1981), was an appeal of an order holding the appellant in contempt for refusing to comply with a grand jury subpoena duces tecum directing him to produce his pocket and desk calendars.  657 F.2d at 7.  Unlike those cases, here the issue is not whether Robison should be forced to produce his notebooks.  Nor, as Robison suggests, is the issue solely whether the notebooks are personal, as opposed to business, records.  Instead the issue is whether the notebooks, previously produced, can be used as evidence against him at trial.

It is important to note that the subpoenas at issue here sought the notebooks from

---

[4] According to Robison, the Second Circuit's six factors demonstrate that his notebooks qualify for Fifth Amendment protection.  First, Robison argues, he alone prepared the entries in his notebooks.  Second, the notebooks contained some deeply personal entries.  Third, Robison contends, he used his notebooks to record his personal observations and tasks.  Fourth, he maintained possession of, and restricted access to, his notebooks by keeping them in his office for his use alone.  Fifth, Robison states, McWane did not require Robison to keep a notebook.  Finally, Robison points out, the notebooks were not necessary for the company to conduct its operations.

[5] According to Robison, other Circuits adhere to this Second Circuit test.  *See In re Grand Jury Proceedings,* 55 F.3d 1012, 1014 (5th Cir. 1995); *United States v. Wujkowski*, 929 F.2d 981, 984 (4th Cir. 1991).

McWane, not Robison. Robison admits in his Motion that the notebooks were in his office at the company, and that he allowed McWane's counsel to collect them. The following passages from *Fisher v. United States*, 425 U.S. 391 (1976), are pertinent here:

> The [Fifth] Amendment protects a person from being compelled to be a witness against himself. Here, the taxpayers retained any privilege they ever had not to be compelled to testify against themselves and not to be compelled themselves to produce private papers in their possession. This personal privilege was in no way decreased by the transfer. It is simply that by reason of the transfer of the documents to the attorneys, those papers may be subpoenaed without compulsion on the taxpayer. The protection of the Fifth Amendment is therefore not available. "A party is privileged from producing evidence but not from its production." *Johnson v. United States, supra*, 228 U.S., at 458, 33 S.Ct., at 572, 57 L.Ed., at 920.

425 U.S. at 398-99.

> The proposition that the Fifth Amendment protects private information obtained without compelling self-incriminating testimony is contrary to the clear statements of this Court that under appropriate safeguards private incriminating statements of an accused may be overheard and used in evidence, if they are not compelled at the time they were uttered, *Katz v. United States*, 389 U.S. 347, 354, 88 S.Ct. 507, 512, 19 L.Ed.2d 576, 583 (1967); *Osborn v. United States*, 385 U.S. 323, 329-330, 87 S.Ct. 429, 432-433, 17 L.Ed.2d 394, 399-400 (1966); and *Berger v. New York*, 388 U.S. 41, 57, 87 S.Ct. 1873, 1882, 18 L.Ed.2d 1040, 1051 (1967); *cf. Hoffa v. United States*, 385 U.S. 293, 304, 87 S.Ct. 408, 414, 17 L.Ed.2d 374, 383 (1966); and that disclosure of private information may be compelled if immunity removes the risk of incrimination. *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). If the Fifth Amendment protected generally against the obtaining of private information from a man's mouth or pen or house, its protections would presumably not be lifted by probable cause and a warrant or by immunity. The privacy invasion is not mitigated by immunity; and the Fifth Amendment's strictures, unlike the Fourth's, are not removed by showing reasonableness. The Framers addressed the subject of personal privacy directly in the Fourth Amendment. They struck a balance so that when the State's reason to believe incriminating evidence will be found becomes sufficiently great, the invasion of privacy becomes justified and a warrant to search and seize will issue. They did not seek in still another Amendment the Fifth to achieve a general protection of privacy but to deal with the more specific issue of <u>compelled</u> self-incrimination.

*Id.* at 400 (emphasis added).

## CONCLUSIONS OF THE COURT AND ORDER

Here, Robison was never compelled nor forced by the Government to produce the notes. From a Fifth Amendment perspective, there has been no constitutional violation and would be none resulting from the introduction of the notes into evidence. From a Fourth Amendment perspective, the subpoenaing of the notes from McWane, Inc. was reasonable. There is no indication that they were delivered without Robison's consent. There would be no Fourth Amendment violation resulting from their introduction into evidence. The notes will be redacted to eliminate purely personal information. The Motion is otherwise denied.

The court has marked as Court's Exhibits subpoenas which resulted in the Government's acquiring said notes. They do not reveal that Robison was coerced or compelled by the Government.

This 3rd of May, 2005.

                                              _____
                                              **ROBERT B. PROPST**
                                              **SENIOR UNITED STATES DISTRICT JUDGE**